UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERTO MORAN; MAURICIA AVILES; and YAZMIN AVILES;<br><br>    Plaintiffs,<br><br>- against -<br><br>THE KING OF EMPANADAS INC.; UPSCALE INTERNATIONAL CATERERS LLC; ODALIS ROSARIO; and RAFAEL SEDENO;<br><br>    Defendants. | Case No. 1:19-cv-1986<br><br><br>COMPLAINT<br><br><br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Roberto Moran, Mauricia Aviles, and Yazmin Aviles (collectively, "Plaintiffs"), by their undersigned counsel, make the following allegations in support of their Complaint against The King of Empanadas Inc. ("King of Empanadas"), Upscale International Caterers LLC ("Upscale International Caterers"), Odalis Rosario, and Rafael Sedeno (collectively, "Defendants"):

## PRELIMINARY STATEMENT

1. Plaintiffs bring this action to recover damages for violations of federal and state labor laws arising out of their employment at King of Empanadas and Upscale International Caterers.

2. As set forth herein, Defendants hired the Plaintiffs to work at King of Empanadas and perform work for Upscale International Caterers. Their work was supervised and controlled by Rosario and Sedeno. Plaintiffs worked for King of Empanadas at different periods of time, beginning in approximately January 2015 until September 2018.

3. Plaintiffs Mauricia Aviles and Yazmin Aviles also performed food preparations for Upscale International Caterers clients during their shifts at King of Empanadas for different periods of time beginning on approximately May 1, 2017, until September 2018.

- 1 -

4. Throughout Plaintiffs' employment, Defendants violated numerous provisions of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by:

    a. failing to pay the lawful minimum wage;

    b. failing to pay overtime compensation;

    c. failing to pay spread-of-hours compensation;

    d. failing to post or provide Plaintiffs with required notices; and

    e. unlawfully withholding reimbursements of expenses required to perform employment duties.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216.

6. This Court has supplemental jurisdiction over Plaintiffs' New York state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because, among other reasons, the Defendants reside in this District and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

8. Plaintiffs are all adults who reside in Queens County, New York.

9. The King of Empanadas Inc. is a New York corporation operating as a Latin American restaurant located at 37-55 108th Street, Queens, NY 11368.

10. Upscale International Caterers LLC is a New York corporation operating as a food catering and meal plan delivery business located at 626 RXR Plaza, Uniondale, NY 11553, which, upon information and belief, operated at times out of King of Empanadas's premises.

11. Rosario is the owner of King of Empanadas and an owner of Upscale International Caterers who, upon information and belief, resides at 1666 Bell Blvd., Apt. 244, Queens, NY 11360.

12. Sedeno is a supervisor at King of Empanadas and an owner of Upscale International Caterers who, upon information and belief, resides at 37-50 108th Street, Apt. 4, Queens, NY 11368.

## FACTUAL ALLEGATIONS

### A. King of Empanadas

13. King of Empanadas is a Latin American restaurant located in the North Corona neighborhood of Queens, New York.

14. The restaurant sells food for consumption on the premises or for take-out and deliveries.

15. King of Empanadas employs about fifteen people.

16. Rosario owns and operates King of Empanadas. He has the authority to hire and fire employees, determine the rate and method of compensation paid to employees, and control the terms and conditions of employment.

17. Sedeno supervises the day-to-day operations of the restaurant. Sedeno has the authority to hire and fire employees, to discipline employees, and to control the terms and conditions of their employment. He also determines when employees can leave work for the day.

18. Upon information and belief, at all times relevant to this action, Defendants were engaged in interstate commerce within the meaning of the FLSA in that King of Empanadas: (i) had employees engaged in commerce or in the production of goods for commerce, or who

handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person; and (ii) had an annual gross volume of sales of not less than $500,000.

### B. Upscale International Caterers

19. Upscale International Caterers is a food catering and meal plan delivery business located in Uniondale, New York.

20. Upscale International Caterers is at least partially owned and operated by Rosario and Sedeno.

21. Rosario and Sedeno used the same kitchen, equipment, and occasionally staff to operate Upscale International Caterers on King of Empanada premises.

22. Beginning in or about May of 2017, Plaintiffs Mauricia and Yazmin Aviles were required to also perform food preparation for Upscale International Caterers during their normal work hours at King of Empanadas.

23. As partial owners and operators of Upscale International Caterers, both Rosario and Sedeno can hire and fire employees, determine the rate and method of compensation paid to employees, and control the terms and conditions of employment.

24. Upon information and belief, at all times relevant to this action, Defendants were engaged in interstate commerce within the meaning of the FLSA in that Upscale International Caterers: (i) had employees engaged in commerce or in the production of goods for commerce, or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person; and (ii) had an annual gross volume of sales of not less than $500,000.

### C. Roberto Moran's Employment

25. Moran worked for King of Empanadas from approximately January 2015 until July 2018.

26. Throughout his employment at King of Empanadas, Moran made food deliveries. He also washed dishes, cleaned, prepared food, and moved food and equipment in and out of storage.

27. Moran worked six days per week throughout the entire period of his employment.

28. From January 2015 to July 2017, Moran worked approximately 58.5 hours per week. On Mondays, Wednesdays, and Thursdays, he would work approximately 5.5 hours per day. On Fridays, Saturdays, and Sundays, he would work approximately 14 hours per day. During this time, he earned $300 per week, or approximately $5.13 per hour.

29. From July 2017 to January 2018, Moran continued to work approximately 58.5 hours per week with the same schedule. During this time, he was paid $350 per week, or approximately $5.98 per hour.

30. From January 2018 to May 2018, Moran continued to work approximately 58.5 hours per week with the same schedule. During this time, he earned $400 per week, or approximately $6.84 per hour.

31. From May 2018 to July 2018, Moran's workload increased by one hour per day on weekdays to 61.5 hours per week. During this time, he earned $450 per week, or approximately $7.32 per hour.

32. For the duration of Moran's employment, he earned tips that could be as little as $10 per day on weekdays and $60 per day on weekends. On the best days, Moran would receive around $20 per day in tips on the weekdays and $80 per day in tips on the weekends.

33. Defendants never paid Moran overtime compensation.

34. Moran frequently worked a spread of more than ten hours per day. Defendants never paid him additional compensation for days in which his spread of hours exceeded ten.

### D. Mauricia Aviles's Employment

35. Mauricia Aviles worked at King of Empanadas from approximately July 2015 until July 2018.

36. Mauricia Aviles worked primarily as a cashier. She also answered phones, prepared food, organized inventory, and bagged food for delivery.

37. On various occasions, beginning in or about May 2017, Mauricia Aviles also prepared food for Upscale International Catering during her normal work hours at King of Empanadas

38. From approximately July 2015 to December 2017, Mauricia Aviles worked seven days per week approximately two times per month. Otherwise, she worked six days per week.

39. During the remainder of her employment, from January 2018 to approximately July 2018, Mauricia Aviles worked four days per week.

40. From July 2015 to October 2017, Mauricia Aviles worked approximately 70 hours per week on the weeks when she worked seven days and 60 hours per week on the weeks when she worked six days. Her shift began at 3:00 pm and ended between midnight and 2:00 am. During this time, she earned $300 per week, or approximately $4.62 per hour.

41. From November 2017 to December 2017, Mauricia Aviles worked approximately 58.5 hours per week. Her shift began at 4:00 pm and ended between midnight and 2:00 am. During this time, she earned $300 per week, or approximately $5.13 per hour.

42. From January 2018 to July 2018, Mauricia Aviles worked approximately 36 hours per week. Her shift began at 4:00 pm and ended between midnight and 2:00 am. During this time, she earned $400 per week, or approximately $11.11 per hour.

43. Mauricia Aviles also earned a share of tips left at the register. On the best days, she would receive around $15 in tips.

44. Defendants never paid Mauricia Aviles overtime compensation.

45. Mauricia Aviles frequently worked a spread of more than ten hours per day. Defendants never paid her additional compensation for days in which her spread of hours exceeded ten.

### E. Yazmin Aviles's Employment

46. Yazmin Aviles worked at King of Empanadas from approximately August 2017 to September 2018.

47. Like her sister Mauricia, Yazmin Aviles worked primarily as a cashier. She also answered phones, prepared food, organized inventory, and bagged food for delivery.

48. On various occasions, beginning in or about May 2017, Yazmin Aviles also prepared food for Upscale International Catering during her normal work hours at King of Empanadas.

49. Yazmin Aviles worked seven days per week approximately one time per month. On all other weeks, she worked six days per week throughout the entire period of her employment.

50. During her employment at King of Empanadas, Yazmin Aviles worked approximately 66.5 hours per week on the weeks when she worked seven days and 57 hours per week on the weeks when she worked six days.

51. Her shift began at 3:00 pm and ended at approximately 12:30am. She earned $450 per week, or approximately $7.58 per hour.

52. Yazmin Aviles also earned a share of tips left at the register. On the best of days, she would receive around $15 in tips.

53. Defendants never paid Yazmin Aviles overtime compensation.

F. **Minimum Wage, Overtime, and Spread of Hours Violations**

54. Throughout their employment at King of Empanadas, Plaintiffs worked long hours for low wages.

55. Plaintiffs worked more than fifty hours per week during all or almost all of their employment. Plaintiffs earned well below the federal and state minimum wage at all relevant times.

56. Defendants never informed Plaintiffs of their intention to utilize the tip credit allowance. Defendants therefore cannot reduce the statutory minimum wage by applying the tip credit allowance available under 29 U.S.C. § 203(m) and 12 N.Y.C.R.R. § 146-1.3.

57. Defendants failed to maintain daily records of tip income received. Therefore, Defendants cannot take a tip credit under the NYLL.

58. Defendants committed the acts alleged in this complaint knowingly, intentionally, and willfully. Defendants knew or should have known that they were violating the law.

59. Defendants knew or should have known that failure to pay the minimum wage, overtime, or the spread of hours premium would economically injure Plaintiffs.

G. **Notice and Record Keeping Violations**

60. Defendants never provided written notice at the time of hiring, as required under NYLL § 195(1), or at the time of payment, as required under NYLL § 195(3), that explained the number of hours worked, gross wages, any deductions, or other information as required under NYLL § 195.

H. **Tools of the Trade Violations**

61. The FLSA and NYLL prohibit employers from requiring minimum wage employees to purchase the tools of their trade. *See* 29 U.S.C. § 201 *et seq.*; 29 C.F.R. § 351.35; 12 N.Y.C.R.R. § 137-2.5(b).

62. The duties of his employment required Moran to purchase and maintain a bicycle to make food deliveries to restaurant customers.

63. Over the course of his employment, Moran had to replace his work bicycle at least four times. The first bicycle cost approximately $120. The replacement bicycles each cost between $80 and $100.

64. In addition, Moran regularly paid mechanics to repair his bicycle.

65. Defendants neither supplied Moran with bicycles nor reimbursed him for expenses related to the purchase or repair of any bicycle he was required to maintain over the course of his employment.

**FIRST CAUSE OF ACTION**
**Failure to Pay Minimum Wages Under the Fair Labor Standards Act**

66. Plaintiffs repeat and incorporate the allegations contained in the preceding paragraphs as if fully set forth here.

67. At all times relevant to this action, Defendants employed Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203.

68. Defendants failed to pay Plaintiffs the applicable legal minimum hourly wage for all hours worked, in violation of 29 U.S.C. § 206(a).

69. Defendants' failure to pay Plaintiffs their lawful minimum wages was willful.

70. Defendants failed to maintain accurate employment records as required by Section 11(c) of the FLSA, 29 U.S.C. § 211(c).

71. Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their underpaid wages and an equal amount of liquidated damages, as well as reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### Failure to Pay Minimum Wages Under the New York Labor Law

72. Plaintiffs repeat and incorporate the allegations contained in the preceding paragraphs as if fully set forth here.

73. At all times relevant to this action, Defendants employed Plaintiffs within the meaning of NYLL, including but not limited to NYLL sections 2 and 651.

74. Defendants failed to pay Plaintiffs the applicable legal minimum hourly wage, in violation of the NYLL § 652.

75. Defendants' failure to pay Plaintiffs the lawful minimum hourly wage was willful. Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages, liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest under NYLL §§ 198(1-a), 663(1).

## THIRD CAUSE OF ACTION
### Failure to Pay Overtime Wages Under the Fair Labor Standards Act

76. Plaintiffs repeat and incorporate the allegations contained in the preceding paragraphs as if fully set forth here.

77. At all times relevant to this action, Defendants employed Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203.

78. Defendants failed to pay Plaintiffs overtime wages at rates of at least one-and-a-half times the regular rate of pay, or one-and-a-half times the applicable minimum wage, for each hour worked in excess of forty hours per week, in violation of 29 U.S.C. § 207.

79. Defendants' failure to pay Plaintiffs their lawful overtime wages was willful.

80. Defendants failed to maintain accurate employment records as required by Section 11(c) of the FLSA, 29 U.S.C. § 211(c).

81. Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages and an equal amount of liquidated damages, as well as reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b).

## FOURTH CAUSE OF ACTION
### Failure to Pay Overtime Wages Under the New York Labor Law

82. Plaintiffs repeat and incorporate the allegations contained in the preceding paragraphs as if fully set forth here.

83. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of NYLL, including but not limited to NYLL §§ 2 and 651.

84. Defendants failed to pay Plaintiffs overtime wages at rates at least one-and-a-half times the regular rate of pay, or one-and-a-half times the applicable minimum wage, for each hour worked in excess of forty hours per week, in violation of the NYLL and accompanying regulations.

85. Defendants' failure to pay Plaintiffs their lawful overtime wages was willful.

86. Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages, liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest under NYLL §§ 198(1-a), 663(1).

## FIFTH CAUSE OF ACTION
### Failure to Pay Spread of Hours Under the New York Labor Law

87. Plaintiffs repeat and incorporate the allegations contained in the preceding paragraphs as if fully set forth here.

88. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law, including but not limited to NYLL §§ 2 and 651.

89. Defendants failed to pay Plaintiffs an additional hour of pay at the minimum wage for each day Plaintiffs worked a spread of hours in excess of 10 hours per day.

90. Defendants' failure to pay Plaintiffs their lawful wages was willful.

91. Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid spread of hours wages, liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest under NYLL §§ 198(1-a), 663(1).

## SIXTH CAUSE OF ACTION
### Failure to Provide Notice at Hiring Under the New York Labor Law

92. Plaintiffs repeat and incorporate the allegations contained in the preceding paragraphs as if fully set forth here.

93. Defendants failed to provide Plaintiffs with written notice within ten business days of their respective first days of employment of the rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information deemed material and necessary by the New York State Department of Labor.

94. Defendants' failure to provide this notice violated NYLL § 195(1)(a).

95. Accordingly, Plaintiffs are entitled to recover damages for each day that the violations occurred or continued to occur, together with costs and reasonable attorney's fees, and any other relief that the Court deems necessary and appropriate under NYLL § 198(1-b).

### SEVENTH CAUSE OF ACTION
**Failure to Provide Notice at Payment Under the New York Labor Law**

96. Plaintiffs repeat and incorporate the allegations contained in the preceding paragraphs as if fully set forth here.

97. Throughout Plaintiffs' employment, Defendants failed to provide Plaintiffs with a written statement at the time wages were paid containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate(s) of pay and basis this of; gross wages; deductions; allowances, if any; net wages; regular hourly rate of pay; overtime rate of pay; number of regular hours worked; and number of overtime hours worker.

98. Defendants' failure to provide notices violated NYLL § 195(3).

99. Accordingly, Plaintiffs are entitled to recover damages for each day that the violations occurred or continued to occur, together with costs and reasonable attorney's fees, and any other relief that the Court deems necessary and appropriate under NYLL § 198(1-d).

### EIGHTH CAUSE OF ACTION
**Unlawful Deductions Under the Fair Labor Standards Act**
**(Moran only)**

100. Plaintiffs repeat and incorporate the allegations contained in the preceding paragraphs as if fully set forth here.

101. Defendants have failed to reimburse Moran with the value of Moran's purchase and maintenance of bicycles used to deliver food to restaurant customers.

102. This failure to reimburse Moran further undercut the minimum and overtime wages that Defendants were required to pay Moran under the FLSA.

103. Defendants' failure violated 29 U.S.C. § 201 *et seq.* and 29 C.F.R. § 531.35.

104. Accordingly, Moran is entitled to recover from Defendants, jointly and severally, damages equal to the amount paid for the purchase and maintenance of bicycles required for

Moran's employment, to the extent that such payments undercut the minimum wage or overtime wages and liquidated damages, as well as reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b).

### NINTH CAUSE OF ACTION
### Unlawful Deductions Under the New York Labor Law
### (Moran only)

105. Plaintiffs repeat and incorporate the allegations contained in the preceding paragraphs as if fully set forth here.

106. Defendants have failed to reimburse Moran with the value of Moran's purchase and maintenance of bicycles used to deliver food to restaurant customers.

107. Defendants' failure violated NYLL §§ 193(1) and 12 NYCRR §137-2.5.

108. Accordingly, Moran is entitled to recover from Defendants, jointly and severally, damages equal to the amount paid for the purchase and maintenance of bicycles required for Moran's employment, to the extent that such payments undercut the minimum wage or overtime wages and liquidated damages, as well as reasonable attorneys' fees and costs of the action pursuant to NYLL § 198.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the following relief be granted:

A. Enter judgment for Plaintiffs and against Defendants on each claim;

B. Award Plaintiffs their unpaid minimum wages and overtime wages due under the FLSA;

C. Award Plaintiffs their unpaid minimum wages, overtime wages, and spread-of-hours wages due under the NYLL;

D. Award Plaintiffs damages due to notice violations at hiring under the NYLL;

E. Award Plaintiffs damages due to notice violations at payment under the NYLL;

- 15 -

      F.      Award Plaintiffs liquidated damages under the FLSA and NYLL;

      G.      Award Plaintiffs attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198(1-a), 198(1-b), 198(1-d), and 663(1);

      H.      Award Plaintiffs appropriate pre- and post-judgment interest;

      I.      Award such other relief as this Court shall deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on issues so triable.

Respectfully submitted,

MAURICIA AVILES,
YAZMIN AVILES, and
ROBERTO MORAN

By their attorneys,

*/s/ Brendan R. McGuire*
Brendan R. McGuire
Channing Jay Turner
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Ph. (212) 230-8800
Fax (212) 230-8888
Email: brendan.mcguire@wilmerhale.com
          channing.turner@wilmerhale.com

– and –

Magdalena Barbosa
CATHOLIC MIGRATION SERVICES
47-01 Queens Boulevard, Suite 201
Sunnyside, New York 11104
Ph. (347) 472-3500
Fax (347) 472-3501
Email: mbarbosa@catholicmigration.org

Dated:  April 5, 2019